United States District Court
Southern District of Texas
**ENTERED**
May 07, 2018
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JULIO CESAR CARDENAS, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:16-306 |
| | § | Criminal No. B:12-512-1 |
| UNITED STATES OF AMERICA, | § | B:13-cr-171-1 |
|     Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On December 4, 2016, Petitioner Julio Cesar Cardenas filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  On June 26, 2017, the Government timely filed a motion to dismiss. Dkt. No. 14.

On February 19, 2018, Cardenas filed a motion to amend his petition to add an additional claim. Dkt. No. 39.  On March 5, 2018, the Government filed a supplemental motion to dismiss. Dkt. No. 41.  Cardenas's original petition and the motion to amend are currently before the Court.

After reviewing the record and the relevant case law, the Court recommends that the original § 2255 petition be dismissed as untimely filed and not entitled to equitable tolling, or, alternatively, be denied as meritless.  The Court further recommends that the motion to amend be dismissed as untimely filed and procedurally defaulted or, alternatively, be denied as meritless.

**I. Background**

    **A. Indictment and Trial**

On June 19, 2012, a federal grand jury – sitting in Brownsville, Texas, – indicted Cardenas and six co-defendants. U.S. v. Cardenas, Criminal No. 1:12-512-1, Dkt. No. 1 (hereinafter "CR 512").  Cardenas was indicted on 16 counts: one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine; one count of conspiracy to possess with intent to distribute more than 100 kilograms of marihuana; one count of

running an unlicensed money transmitting business; two counts of possession with intent to distribute five or more kilograms of cocaine; five counts of possession with intent to distribute 100 kilograms or more of marihuana; four counts of possession with intent to distribute 50 kilograms or more of marihuana; and two counts of possession with intent to distribute less than 50 kilograms of marihuana. Id.

On March 12, 2013, a federal grand jury – sitting in Brownsville, Texas, – returned a second indictment against Cardenas, in a separate criminal case, for one count of being a felon in possession of a handgun. U.S. v. Cardenas, Criminal No. 1:13-171-1, Dkt. No. 1 (hereinafter "CR 171"). On April 30, 2013, the Court ordered that the charges in CR 171 be consolidated with the charges in CR 512, for trial purposes. CR 171, Dkt. No. 13.

On May 1, 2013, the Government filed an "Information of Prior Conviction," notifying the Court that Cardenas had three prior state drug felony convictions. CR 512, Dkt. No. 296. All three convictions were 1995 Texas convictions for delivery of a controlled substance. Id; see also CR 512 Dkt. No. 381, pp. 43-44 (pre-sentencing report listing prior convictions). If Cardenas was convicted of the conspiracy to possess with intent to distribute cocaine or either of the two possession with intent to distribute cocaine charges, the existence of these prior state felony convictions mandated a life sentence. 21 U.S.C. 841(b)(1)(A). Similarly, existence of these prior felony convictions also mandated a maximum sentence of life imprisonment if Cardenas was convicted of conspiracy to possess with intent to distribute marihuana. 21 U.S.C. 841(b)(1)(B).

Cardenas pled not guilty to all charges and proceeded to trial. Prior to jury selection, Cardenas was sworn and testified for the purpose "of making the record." CR 512 Dkt. No. 480. The following testimony occurred.

> [DEFENSE COUNSEL:] And we have discussed the Sentencing Guidelines, your wishes with respect to resolving this particular case, and I have advised you that the Government is prepared to allow you to plead to Count 2 and 3, which is the marijuana conspiracy and the money laundering remittance charge in Count 3. And if the Court – that they would go to the Court and ask the Court to withdraw the enhancement that was filed against

2

you yesterday about 4:45 [the information of prior conviction], and that would leave you effectively with a punishment range, statutorily from five to forty years, correct?

[CARDENAS:] Yes.

[DEFENSE COUNSEL:] And you are rejecting that offer at this time, correct?

[CARDENAS:] Yes, sir.

[DEFENSE COUNSEL:] Now, you understand, Mr. Cardenas, and I have explained to you that the enhancement actually increases your mandatory minimum from five years to ten years, and it could go all the way up to life, correct?

[CARDENAS:] Yes.

[DEFENSE COUNSEL:] And even though you understand that, you want to proceed to trial in this case?

[CARDENAS:] Yes.

[DEFENSE COUNSEL:] Now, you understand that if you're found guilty now with the enhancement as to Count 1 in the first Indictment that you're looking possibly at a life sentence or a mandatory life sentence?

[CARDENAS:] Yes.

[DEFENSE COUNSEL:] And knowing that, you still want to continue with your trial?

[CARDENAS:] Yes.

[DEFENSE COUNSEL:] And you're doing this voluntarily and freely?

[CARDENAS:]  Voluntarily.

CR 512 Dkt. No. 480, pp. 3-4.

On May 20, 2013, jury trial began on all charges faced by Cardenas. CR 512, Dkt. No. 485.  On May 31, 2013, – following a eight-day trial – the jury found Cardenas guilty on all charges in both cases. CR 512 Dkt. No. 334; CR 171 Dkt. No. 31.

**B. Presentence Report**

In a complex final presentence report ("PSR"), Cardenas's convictions were placed into two groups, CR 512 Dkt. No. 437.  The first group included all of his drug convictions – conspiracy to possess cocaine, conspiracy to possess marihuana, possession of cocaine with intent to distribute, and possession of marihuana with intent to distribute – as well as the gun possession conviction from CR 171. CR 512 Dkt. No. 437, p. 39.  The second group was the conviction for running an unlicensed money business. Id.

Under the Guidelines, the total offense level for each "group" is calculated separately. U.S.S.G. § 3D1.4.  After calculating each group's total offense level, those levels are then compared to arrive at a total offense score for all of the offenses. Id.

**1. Drug & Firearm Possession**

The convictions for drug trafficking and possessing a firearm were grouped together because "the offense level is determined largely on the basis of the total quantity of substances involved and the offense behavior was ongoing or continuous in nature" CR 512 Dkt. No. 437, p. 39 (citing U.S.S.G. § 3D1.2).  Within this grouping, "the offense level for all of the counts of conviction (combined offense level) is the offense level for the most serious of the counts comprising the group, i.e., the count resulting in the highest offense level in the group, pursuant to U.S.S.G. § 3D1.3." Id, p. 39.  In this instance, the count with the highest offense level was Count 1 – conspiracy to possess, with the intent to distribute, cocaine. Id.

Cardenas was assessed a base offense level of 36, because his relevant conduct was determined to involve 14,801.63 kilograms of marihuana.[1] CR 512 Dkt. No. 437, p. 39.

---

[1] When a defendant's relevant conduct in a drug case encompasses multiple illegal substances, those substances are converted to an equivalent weight in marihuana, which is then used to calculate the base offense level. U.S.S.G. § 1B1.1.

4

Cardenas was assessed an additional two level enhancement for possessing a dangerous weapon during the commission of the offense, as well as another two-level enhancement for maintaining a premises for distributing controlled substances. Id, pp. 39-40.  He was also assessed an additional four-level enhancement for serving as an organizer or leader of the criminal activity. Id.  Thus, his adjusted offense level for this grouping was 44. Id.

### 2. Unlicensed Money Transmitting Business

As to this second grouping, Cardenas was assessed a base offense level of 20, based upon  a relevant conduct finding that his business had a value of $841,018. CR 512 Dkt. No. 437, p. 40.  Cardenas was assessed an additional two level enhancement because he knew or believed that the funds were the proceeds of an illegal activity. Id, p. 40.  He was assessed an additional four-level enhancement for serving as an organizer or leader of the criminal activity. Id.  Thus, his adjusted offense level for this grouping was 26. Id.

### 3. Calculating Combined Offense Level

When calculating the combined offense level in a case involving several groupings, the Court is required to identify the highest offense level within the groupings and then compare the remaining groups to that highest offense level. U.S.S.G. 3D1.4.  The highest offense level serves as the base for determining the combined offense level.

In this case, the highest offense level was 44, which resulted from the conviction for conspiracy to possess with intent to distribute cocaine.  That offense level served as Cardenas's base level for sentencing. CR 512 Dkt. No. 437, p. 41; U.S.S.G. § 3D1.4.  The result was that Cardenas had total offense level of 44 for all of his convictions. Id.

### 4. Criminal History Score

Cardenas had five prior criminal convictions, resulting in 14 criminal history points. CR 512 Dkt. No. 437, pp. 41-44.  Pursuant to U.S.S.G. § 4B1.1, Cardenas's criminal history category was VI, because the instant offense was a controlled substances offense and he had at least two prior felony convictions for drug trafficking or crimes of violence. Id, p. 41.

### 5. Guideline Sentence Range

Based upon the required groupings of the offenses, Cardenas ended up with a total offense level of 44 and criminal history category of VI.  With an offense level of 44 and criminal history category VI, Cardenas's guideline sentencing range for all of his offenses was life imprisonment. CR 512 Dkt. No. 437, p. 51. For the individual counts of conviction, the Guideline sentence for the offense was the lesser of the maximum sentence provided by the statute that was violated or the recommended guideline sentencing range.

Thus, for the conspiracy to possess with intent to distribute cocaine; the conspiracy to possess with intent to distribute marihuana; and, the two counts of possession with intent to distribute cocaine, the guideline sentencing range was life imprisonment, which was the maximum statutory sentence. CR 512 Dkt. No. 437, p. 51.

For the five counts of possession with intent to distribute 100 kilograms or more of marihuana, the guideline sentencing range was 40 years, which was the maximum statutory sentence for the offense, and was based upon the amount of marihuana alleged in the indictment. CR 512 Dkt. No. 437, p. 51.

As to the four counts of possession with intent to distribute 50 kilograms or more of marihuana, the guideline sentencing range was 20 years, which was the maximum statutory sentence for the offense and, again, was based upon the amount of marihuana alleged in the indictment. CR 512 Dkt. No. 437, p. 51.

As for the two counts of possession with intent to distribute less than 50 kilograms of marihuana, the guideline sentencing range was 60 months, which was also the maximum statutory sentence for the offense, and, as with the earlier sentences, was based upon the amount of marihuana alleged in the indictment. CR 512 Dkt. No. 437, p. 51.

Finally, the conviction for operating an unlicensed money transmitting business, carried a guideline sentencing range of 60 months, which was the maximum statutory sentence for the offense. CR 512 Dkt. No. 437, p. 51.

**C. Sentencing**

On December 11, 2013, the sentencing hearing was held. CR 512, Dkt. No. 494. Given Cardenas's prior convictions, the Court sentenced Cardenas to the statutory maximum sentence for each count of conviction.  Accordingly, he was sentenced to: life imprisonment for each of the counts of conspiracy to possess with intent to distribute cocaine, the conspiracy to possess with intent to distribute marihuana, and the two counts of possession with intent to distribute cocaine; 40 years for each of the five of the counts of possession with intent to distribute marihuana; 20 years for each of the four counts of possession with intent to distribute marihuana; and 60 months for each of the two counts of possession with intent to distribute marihuana and the count of running an unlicensed money transmitting business. CR 512, Dkt. No. 494, pp. 44-46.  All of the sentences were ordered to run concurrently. Id. On the gun charge, Cardenas was sentenced to 10 years of imprisonment, to be served concurrently to all of the other sentences. CR 171 Dkt. No. 61, p. 2.

On January 6, 2014, judgment was entered in the gun possession case. CR 171, Dkt. No. 61.  On January 8, 2014, judgment was entered in the drug case. CR 512, Dkt. No. 473.

**D. Direct Appeal**

Cardenas timely filed a notice of appeal in both cases. CR 512, Dkt. No. 449; CR 171, Dkt. No. 50.  On appeal, Cardenas raised four issues, arguing that the Court erred :  (1) in "raising his statutory minimum sentence based on prior convictions that were not charged in the indictment or proven to the jury beyond a reasonable doubt;" (2) when it incorrectly treated his prior state felony convictions for drug trafficking as three separate offenses instead of a single conviction; (3) when it increased "his guidelines sentence range based on facts not found by a jury beyond a reasonable doubt;" and (4) when it imposed "sentences that were grossly disproportionate to his crimes," violating the Eighth Amendment. U.S. v. Cardenas, 606 F. App'x 246 (5th Cir. 2015).

On June 11, 2015, the Fifth Circuit affirmed Cardenas's convictions, finding that all of Cardenas's claims were foreclosed by binding precedential case law. U.S. v. Cardenas, 606 F. App'x 246 (5th Cir. 2015).

On October 19, 2015, the Supreme Court denied Cardenas's petition for <u>writ of</u> <u>certiorari</u>. <u>Cardenas v. U.S.</u>, 136 S. Ct. 373 (2015).  On December 7, 2015, the Supreme Court denied Cardenas's petition for rehearing of the <u>certiorari</u> denial. <u>Cardenas v. U.S.</u>, 136 S. Ct. 611 (2015).

### E. Procedural History

On December 4, 2016, Cardenas, <u>via</u> retained counsel William Kent, filed the instant motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  Cardenas raised one overarching claim: that Jody Young, the Assistant United States Attorney who prosecuted his case, had a conflict of interest. Dkt. No. 2.  According to Cardenas, he and Young got into a fist fight at a Brownsville restaurant – in January 1995– after Young prosecuted Cardenas in a state court case that ended in a hung jury. Dkt. No. 2-1. Cardenas further claims that on the second day of his retrial – which occurred in April 1995 – he tried to provide substantial assistance about an unsolved murder that he claimed "the star witness" against him was involved in, along with a Brownsville police officer, and a Border Patrol officer, but Young was "very sarcastic" in turning down the offer.[2] Dkt. No. 2-2.

Cardenas further asserts that his trial lawyers were ineffective for failing to file a motion to seek Young's recusal, given his purported conflict of interest. Dkt. No. 3. Cardenas further claims that because of his

> prior history with the same prosecutor who had previously rejected his effort to provide substantial assistance in his state prosecution, Cardenas was unable to trust that this conflicted prosecutor would exercise his prosecutorial discretion in a disinterested manner when it came to evaluating and rewarding substantial assistance and for this reason was compelled to persist in a not guilty plead and take his case to trial, when he otherwise would have chosen to plead guilty, cooperate with the Government and receive a substantially lesser sentence than life imprisonment.

> Dkt. No. 3.

---

[2] The Court notes, in passing, that the witness, the Border Patrol agent, and the Brownsville police officer were eventually arrested for that murder. Tim Lopes, <u>Murder suspects had an affair</u>, Brownsville Herald, Nov. 26, 1998, https://bit.ly/2jurX3i (last accessed May 4, 2018).

On April 27, 2017, the Court ordered the Government to file a response to the petition. Dkt. No. 12.[3]

On June 26, 2017, the Government timely filed a motion to dismiss, asserting that the instant petition was untimely filed and not entitled to equitable tolling. Dkt. No. 14.  The Government further argued that Cardenas had not established that Young had a conflict of interest that would have required his recusal. Id.

On September 22, 2017, Kent filed a motion to withdraw as Cardenas's attorney in this case. Dkt. No. 21.  Kent's motion admitted that there "appears to be an unbroken wall of authority supporting the position that a petition for rehearing on a denial of certiorari on direct appeal does not toll the AEDPA time limit." Id.  Kent admitted that he did not research the issue, of whether a petition for rehearing on a denial of certiorari tolls the one-year time limit to file a § 2255 petition, because he found the concept to be "counter intuitive." Id. Kent sought to withdraw, because he had created a possible conflict of interest by not timely filing the petition and admitted that "the fault in the late filing of this motion lies with me as his attorney and in no way should be attributed to" Cardenas. Id.

On that same day, the Court granted the motion to withdraw and extended the deadline for Cardenas to file a response to the motion to dismiss. Dkt. No. 22.

On February 19, 2018, Cardenas – via a newly-retained attorney – filed a response to the motion to dismiss. Dkt. No. 40.  On that same day, Cardenas filed a motion to amend his § 2255 petition to include a claim that his career offender enhancement under the Sentencing Guidelines was now invalid under the holdings of U.S. v. Hinkle, 832 F.3d 569 (5th Cir. 2016), and Mathis v. U.S., 136 S.Ct. 2243 (2016). Dkt. No. 39.

On March 5, 2018, the Government filed a supplemental response to Cardenas's motion to amend his complaint. Dkt. No. 41.  The Government asserted that the motion to amend was untimely filed; Mathis and Hinkle do not apply retroactively to cases on collateral

---

[3] On March 31, 2017, the magistrate judge originally assigned to this case recused himself. Dkt. No. 11.

review; and that those cases do not apply to 21 U.S.C. § 841(b), which mandates increased sentencing exposure, if the defendant has previous convictions for "felony drug offenses." Id.  The Government also moved for the Court to order Cardenas's trial attorneys to file affidavits regarding his claims. Id.

On March 9, 2018, Cardenas filed a reply to the supplemental response, agreeing with the Government's request to have Cardenas's trial attorneys file affidavits regarding his claims. Dkt. No. 42.

On March 12, 2018, the Court ordered Adolfo Alvarez and Robert Garza to file affidavits responding to Cardenas's petition. Dkt. No. 43.  The Court further stated that the affidavits "should specifically address (1) whether counsel was aware of Cardenas's prior history with AUSA Jody Young; (2) whether that prior history impacted any plea negotiations; (3) all plea offers tendered by the Government, whether those offers were presented to Cardenas and why any plea offers were rejected." Id.

On April 9, 2018, Garza filed an affidavit, stating that he was informed of Cardenas's history with Young "at the initial debriefing." Dkt. No. 48.  Garza further stated that the prior history did not have a bearing on the plea negotiations, which he said was more impacted by: Cardenas's criminal history; the "extensive" evidence against Cardenas; and the existence of cooperating defendants. Id.  Garza said that a plea deal was offered to Cardenas, but it included an unspecified cocaine charge, to which Cardenas refused to plead guilty. Id.  Garza stated that he withdrew from representing Cardenas prior to trial. Id.

On April 13, 2018, Alvarez filed his affidavit, also stating that he was made aware of the history between Cardenas and Young. Dkt. No. 49.  Alvarez said that the history did not impact the plea negotiations because Cardenas "did not want to plea and insisted in a trial to a jury." Id.  Alvarez stated that the Government offered his client a plea deal, which was rejected and the specific terms of the deal were placed on the record. Id.

On April 16, 2018, the Government filed a motion for leave to file a response to Alvarez's affidavit, confirming that the terms of the proposed plea offer were made on the

record when Cardenas testified prior to jury selection. Dkt. No. 50.  On April 18, 2018, the Court granted the motion for leave to file the response. Dkt. No. 51.

## II. Applicable Law

### A. Section 2255

Cardenas seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

After a petitioner's conviction becomes final, the Court is entitled to presume that he stands fairly convicted. U.S. v. Frady, 456 U.S. 152, 164 (1982); U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001).  A petitioner who seeks to challenge a final conviction by collateral attack, can do so on constitutional or jurisdictional grounds. 28 U.S.C. § 2255(a); U.S. v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991) (en banc).

Claims of ineffective assistance of counsel generally cannot be resolved on direct appeal and are properly raised for the first time in a § 2255 petition. U.S. v. Merritt, 24 F.3d 240 (5th Cir. 1994) (citing U.S. v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992).

### B. Timeliness

As relevant here, a defendant must file a § 2255 motion within one year of either (1) his conviction becoming final, or, (2) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(1)-(3).  In determining if the latter provision applies, the Court must consider if the Supreme Court issued a new rule, i.e., one that "breaks new ground or imposes a new

obligation on the States or the Federal Government." Teague v. Lane, 489 U.S. 288, 301 (1989).

However, the one-year period of limitations under 28 U.S.C. § 2255(f) is not jurisdictional and is subject to equitable tolling. U.S. v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002). Having said that, equitable tolling should be invoked only in "rare and exceptional" circumstances. Id. "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996). On the other hand, a "garden variety claim of excusable neglect" does not support equitable tolling. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).

### C. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id. To prove that counsel's performance was deficient, a petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Failure to prove either prong will defeat an ineffective assistance claim." Leal v. Dretke, 428 F.3d 543, 548 (5th Cir. 2005). If the Court can resolve the claim based solely on the prejudice prong, it should do so without reference to the deficient performance prong. U.S. v. Ridgeway, 321 F.3d 512, 514-15 (5th Cir. 2003), abrogated on other grounds in U.S. v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004); see also Strickland, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

A defendant is "entitled to effective assistance of counsel at all stages of his criminal trial, including the sentencing phase." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997). A defendant may show prejudice at sentencing if counsel's ineffective assistance resulted in any additional incarceration. Glover v. U.S., 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance.").

### D. Prosecutorial Conflict of Interest

There is a "a categorical rule against the appointment of an interested prosecutor." U.S. v. Lanier, 879 F.3d 141, 150 (5th Cir. 2018) (quoting Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 814 (1987)).  Generally speaking, "the existence of a conflict of interest is a legal question subject to de novo review," and is not subject to a harmless error analysis. Lanier, 879 F.3d at 150.

The Court notes that the conflict of interest rules are not as stringent for prosecutors as they are for judicial officers. See Young, 481 U.S. at 807 ("We have thus declined to find a conflict of interest [for prosecutors] in situations where the potential for conflict on the part of a judge might have been intolerable.").  "[F]ederal prosecutors are prohibited from representing the Government in any matter in which they, their family, or their business associates have any interest." Young, 481 U.S. at 803 (citing 18 U.S.C. § 208(a)).  The statute cited by the Supreme Court in Young prohibits government employees from participating in proceedings in which they or anyone close to them "has a financial interest." 18 U.S.C. § 208(a).

"[A] trial court on timely motion should disqualify a prosecutor from participating in a criminal action when he has a personal conflicting interest in a [parallel] civil case." U.S. v. Heldt, 668 F.2d 1238, 1276 (D.C. Cir. 1981).  At the same time, there may be instances where "a biasing influence may be 'too remote and insubstantial' to pose a 'realistic possibility' of distorting the judgment of officials tasked with prosecutorial functions." U.S. v. Farrell, 115 F. Supp. 3d 746, 753 (S.D.W. Va. 2015) (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 250-51 (1980)).

### III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the petitioner at a hearing. 28 U.S.C. § 2255.  Further, a district court may deny a § 2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992).  The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

Cardenas's petition and proposed amended complaint are untimely filed and cannot be saved by equitable tolling.  Even if the claims were timely filed, Cardenas is not entitled to relief on any of his claims.

### A. Timeliness

As previously noted, Cardenas had one year after his conviction became final to file his § 2255 petition. 28 U.S.C. § 2255(f)(1).  A conviction is final when the time for filing a certiorari petition expires or when the Supreme Court, on direct appeal, affirms the conviction on the merits or denies the petition for writ of certiorari. Clay v. U.S., 537 U.S. 522, 527 (2003).

The Fifth Circuit has held that this period is not extended when a petitioner files a motion for rehearing from the denial of a petition for writ of certiorari, concluding that "an order denying certiorari review takes legal effect and is not suspended pending any application for rehearing." U.S. v. Thomas, 203 F.3d 350, 356 (5th Cir. 2000).

On October 19, 2015, the Supreme Court denied Cardenas's petition for writ of certiorari. Cardenas v. U.S., 136 S. Ct. 373 (2015).  Based upon that date, Cardenas had until October 19, 2016 to timely file his § 2255 petition; he did not file his petition until December 4, 2016. Dkt. No. 1.  Thus, his petition was untimely by almost two months.

Cardenas admits that his petition falls outside of the statute of limitations period. Dkt. No. 39-1, p. 9 ("Cardenas' § 2255 motion is seemingly untimely under § 2255(f)(1).").  Despite this apparent admission, Cardenas proffers several arguments as to why his claims should still be considered on the merits and not dismissed as untimely filed.

14

### 1. Equitable Tolling

Cardenas asserts that he is entitled to equitable tolling because his original <u>habeas</u> attorney, William Kent, misrepresented the date by which the 2255 had to be filed, which in turn, "prevented Cardenas from timely filing his § 2255 motion." Dkt. No. 39-1, p. 15. Despite this argument, and after careful review, the Court finds that equitable tolling is not warranted in this case.

The facts underlying the claim to equitable tolling do not appear to be in dispute. Kent believed that the one year statute of limitations began running after the Supreme Court denied Cardenas's petition for rehearing. Dkt. No. 21. Kent did not research the issue, because any other conclusion would be "so counter intuitive that it did not even occur to me to check or research the question before relying upon the rehearing order tolling the time limit." <u>Id</u>, p. 3. On October 18, 2016 – one day prior to the deadline for timely filing a § 2255 petition in this case – Kent met face-to-face with Cardenas at Beaumont USP. <u>Id</u>. At that meeting, Cardenas expressed concern "that we had missed the deadline and I assured him we had not," because Kent had "no doubt" that "the deadline was on the one-year anniversary of the denial of rehearing by the Supreme Court." <u>Id</u>.

It is clear from the record that Kent honestly believed that the deadline ran from the denial of rehearing, rather than the initial denial of <u>certiorari</u>. The case law, however, is equally clear that "counsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [petitioner's] <u>habeas</u> petition in the district court within the one-year limitations period." <u>U.S. v. Riggs</u>, 314 F.3d 796, 799 (5th Cir. 2002). If an attorney misunderstands the applicable statute of limitation, that attorney "committed a very basic and unprofessional error," which does not merit equitable tolling.[4] <u>Id</u>. As the Fifth Circuit noted, a <u>pro se</u> petitioner is not entitled to equitable tolling because he or she was mistaken about the deadline to properly file a petition and "it would be rather peculiar

---

[4] The Court notes that Cardenas cannot maintain a claim of ineffective assistance of counsel against Kent as a matter of law. A defendant does not have a Sixth Amendment right to effective assistance of counsel in collateral attack proceedings. <u>U.S. v. Daniel</u>, 21 F.3d 1108 (5th Cir. 1994).

to treat a trained attorney's error more leniently than we treat a pro se litigant's error." Riggs, 314 F.3d at 799.

This is especially, true because "the attorney is the prisoner's agent, and under 'well-settled' agency law, the principal bears the risk of his agent's negligent conduct." Maples v. Thomas, 565 U.S. 266, 132 S. Ct. 912, 914 (2012). "Thus, a petitioner is bound by his attorney's failure to meet a filing deadline and cannot rely on that failure to establish cause." Id.

There is an exception for instances when an attorney intentionally deceives a client, causing the client to believe that a timely petition had been filed or what the proper deadline was for filing such a petition. Riggs, 314 F.3d at 799. The Fifth Circuit has concluded that equitable tolling may be warranted when an attorney tricked a client into believing that a petition had been timely filed with the court and misled the client by "telling his father that the petition had in fact been filed directly with the judge, explaining the lack of record in the clerk's office." U.S. v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002). The Fifth Circuit has also concluded that equitable tolling may be warranted when an attorney falsely informs a client that a direct appeal has been filed when the attorney never even filed a notice of appeal. U.S. v. Sealed Appellant 1, 70 F. App'x 774, 775 (5th Cir. 2003).

The facts of this case are much closer to Riggs than Wynn or Sealed Appellant. Kent negligently believed that the filing deadline ran from the denial of rehearing, despite the fact that every circuit court that has addressed this issue has concluded otherwise. In re Smith, 436 F.3d 9, 10 (1st Cir. 2006); Rosa v. U.S., 785 F.3d 856, 857 (2d Cir. 2015); U.S. v. Segers, 271 F.3d 181, 185-86 (4th Cir. 2001); Thomas, 203 F.3d at 356; Robinson v. U.S., 416 F.3d 645, 650 (7th Cir. 2005); Campa-Fabela v. U.S., 339 F.3d 993, 993 (8th Cir. 2003); U.S. v. Aguirre-Ganceda, 592 F.3d 1043, 1045 (9th Cir. 2010); U.S. v. Willis, 202 F.3d 1279, 1280-81 (10th Cir. 2000); Drury v. U.S., 507 F.3d 1295, 1296 (11th Cir. 2007).

There is no evidence in the record that Kent intentionally misled Cardenas concerning the filing deadline. Implicit in the requirement, that the attorney intentionally mislead the

client, is that the attorney had knowledge of the correct facts, but consciously choose to mislead the client.  If the attorney was operating under a misconception about the applicable law, then the attorney was merely negligent and equitable tolling is inapplicable. Wion v. Quarterman, 567 F.3d 146, 149 (5th Cir. 2009) (Equitable tolling is "not justified merely because an attorney makes a mistake of law regarding limitations."); U.S. v. Petty, 530 F.3d 361, 366 (5th Cir. 2008) ("Mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified."); see also Triplett v. King, 250 F. App'x 107, 109 (5th Cir. 2007) (attorney's possible miscalculation of the filing deadline, when agreeing to represent client, did not warrant equitable tolling).

The case law is clear.  Kent's error is not a basis for equitable tolling and Cardenas's attempt to invoke equitable tolling should be denied.

### 2. Prior Filings

Cardenas also asserts that the Court should construe his prior pro se motions and letters in his criminal case as a timely § 2255 petition.  Despite the assertion, neither the facts, nor the law, support relief.

Cardenas filed several letters in his criminal case after his case was appealed.  He repeatedly requested copies of various documents and transcripts. CR 512 Dkt. Nos. 587, 610, 616, 641, 643, 652, 673.  Two of these letters referenced his prior conflict with Young, but did not ask for substantive relief. CR 512 Dkt. Nos. 616, 644.

On December 21, 2015, Cardenas sent a letter to the Court asking for the appointment of counsel for a § 2255 petition. CR 512 Dkt. No. 636.  In that letter, Cardenas specifically asked the Court "not to take this request as a [§ 2255] motion and give me an opportunity to submit a proper motion in the event this court does not see fit to provide an attorney." Id.

On August 17, 2016, Cardenas filed a motion for appointment of counsel as to whether he had a viable claim to relief after the Supreme Court's decision in Johnson v. U.S., 135 S.Ct. 2251 (2015).

When addressing claims made by pro se litigants, the label attached to a filing is not dispositive, rather it is the substance of the filing that determines its nature. U.S. v. Bernal, 551 F. App'x 177, 179 (5th Cir. 2014).  There was nothing in Cardenas's prior filings that raised any collateral attacks on his convictions.  Instead, he was either seeking documents or the appointment of counsel.  Indeed, in his request for appointment of counsel, Cardenas specifically asked the Court to not consider that letter to be a substantive § 2255 petition. CR 512 Dkt. No. 636.  In none of his correspondence did Cardenas ever make substantive claims for relief that put the Court and the Government on notice that he was collaterally attacking his conviction. Thus, whether you judge Cardenas's  correspondence by their title or their substance, the first time that Cardenas collaterally attacked his conviction was when Kent filed the untimely § 2255 petition.  Accordingly, this claim is meritless and should be denied.

### 3. New Claim

Cardenas has moved to amend his complaint to add a claim that his career offender status, under the Guidelines, is now invalid because his predicate convictions are no longer applicable under controlling case law.  As discussed later, the claim is meritless, but even if it had merit, it is clearly untimely.

In Mathis v. U.S., — U.S. — , 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), the Supreme Court addressed the use of predicate felony convictions under the Armed Career Criminal Act ("ACCA").  There, where the underlying statute that formed the basis of the previous conviction was overly inclusive – i.e. prohibits conduct that is not considered part of the generic definition of the crime – the Supreme Court held that the sentencing court can consider whether the elements of the crime met the generic definition, but not whether the means of the crime did so. Id.  In Mathis, the defendant had a previous conviction for burglary in Iowa.  The generic definition of burglary for ACCA purposes required the unlawful entry into a building or other structure. Id.  The Iowa burglary statute penalized the unlawful entry into "any building, structure, [or] land, water, or air vehicle." Id. (citing Iowa Code § 702.12).  The Mathis court held that this statute did not fit the generic definition of

18

burglary, because it penalized breaking into vehicles, which went beyond the generic definition of breaking into structures. The <u>Mathis</u> court concluded that the sentencing court was not permitted to inquire as to what the defendant actually did, but rather must limit its inquiry to the requirements , <u>i.e.</u> the language, established in the statute.

The Fifth Circuit has extended the statutory focus of <u>Mathis</u> to provisions of the Sentencing Guidelines. <u>U.S. v. Hinkle</u>, 832 F.3d 569, 571 (5th Cir. 2016). In <u>Hinkle</u>, the Court of Appeals concluded that a prior conviction for delivery of a controlled substance, under Texas law, cannot serve as a predicate offense for the Sentencing Guidelines provision setting out the career offender enhancement. <u>Id.</u>

<u>Mathis</u> was decided on June 23, 2016. <u>Mathis</u>, 136 S. Ct. 2243. Cardenas filed his § 2255 petition on December 4, 2016 and filed his motion to amend on February 19, 2018. Dkt. Nos. 1, 39. As noted earlier, under the present facts, a <u>habeas</u> claim must be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Thus, if <u>Mathis</u> is retroactive <u>and</u> Cardenas filed his claim within one year of <u>Mathis</u> being decided, the claim would be timely. Neither condition is satisfied in this case.

### a. Retroactivity

In order to determine if Cardenas's claim is timely filed, the Court must determine if <u>Mathis</u> announced a new right for purposes of § 2255(f)(3). "[A] case announces a new rule if the result was not <u>dictated</u> by precedent existing at the time the defendant's conviction became final." <u>Teague v. Lane</u>, 489 U.S. 288, 301 (1989) (emphasis original).

The Supreme Court explicitly stated that the result in Mathis was dictated by its prior precedents. <u>Mathis</u>, 136 S. Ct. at 2257 ("Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements. . . . And that rule does not change when a statute happens to list possible alternative means of commission."). Thus, it would appear on its

face that <u>Mathis</u> did not announce a new rule for purposes of § 2255(f)(3).

Indeed, every circuit court to address this issue has held that <u>Mathis</u> is not retroactive on collateral review. <u>Dimott v. U.S.</u>, 881 F.3d 232, 237 (1st Cir. 2018); <u>Washington v. U.S.</u>, 868 F.3d 64, 66 (2d Cir. 2017); <u>In re Lott</u>, 838 F.3d 522, 523 (5th Cir. 2016); <u>In re Conzelmann</u>, 872 F.3d 375, 377 (6th Cir. 2017); <u>Dawkins v. U.S.</u>, 829 F.3d 549, 551 (7th Cir. 2016); <u>Arazola-Galea v. U.S.</u>, 876 F.3d 1257, 1259 (9th Cir. 2017); <u>U.S. v. Taylor</u>, 672 F. App'x 860, 864 (10th Cir. 2016); <u>In re Hernandez</u>, 857 F.3d 1162, 1164 (11th Cir. 2017).

Similarly, every district court to address this issue has come to the same conclusion. See <u>U.S. v. Mitchell</u>, No. CR 07-40, 2018 WL 1912157, at *3 (E.D. La. Apr. 23, 2018); <u>Carter v. U.S.</u>, No. 1:09-CR-103-HSM-SKL-1, 2018 WL 1387065, at *6 (E.D. Tenn. Mar. 19, 2018); <u>U.S. v. Crawford</u>, No. 8:11CR353, 2018 WL 1136896, at *3 (D. Neb. Mar. 1, 2018); <u>U.S. v. Acosta</u>, No. CR 11-01784-JCH, 2018 WL 1135392, at *3 (D.N.M. Feb. 28, 2018); <u>Blackwell v. U.S.</u>, Case No. 4:10-cr-00012, 2016 WL 5849384, at *5 (W.D. Va. Oct. 6, 2016).

Thus, it seems clear that <u>Mathis</u> did not announce a new rule for purposes of § 2255(f)(3), leading to the inescapable conclusion that this claim was untimely filed.[5]

#### b. Relation Back

Even if the Court assumes that <u>Mathis</u> is retroactive, Cardenas's proposed amendment does not relate back to the original filing date of the 2255 petition, for which reason it is still untimely.

---

[5] Furthermore, Cardenas's <u>Mathis</u>-based claim is procedurally defaulted. He could have raised this issue on direct appeal, even though <u>Mathis</u> was decided after the Fifth Circuit affirmed his conviction. The Supreme Court has stated that a <u>habeas</u> petitioner does not have good cause for failing to raise an issue on direct appeal – even if the key Supreme Court precedent does not arise until after the appeal is decided – unless the underlying claim "is so novel that its legal basis is not reasonably available to counsel." <u>Bousley v. U.S.</u>, 523 U.S. 614, 622 (1998). Typically, a defendant can meet this standard by demonstrating that the Supreme Court explicitly overruled a prior precedent. <u>Reed v. Ross</u>, 468 U.S. 1, 17 (1984). Given that <u>Mathis</u> was an application of prior precedents on this issue, Cardenas does not have good cause for failing to raise this issue on direct appeal.

"It is well settled that [Fed. R. Civ. P. 15] applies to federal <u>habeas</u> proceedings." <u>U.S.</u> <u>v. Gonzalez</u>, 592 F.3d 675, 679 (5th Cir. 2009).  A proposed amendment relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B).

The Supreme Court has held that a <u>habeas</u> petitioner's proposed amended claim does not automatically relate back to the original complaint, simply because it arose from the same trial, conviction, and/or sentence. <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005).  Rather, it only relates back to the extent that "the original and amended petitions state claims that are tied to a common core of operative facts." <u>Id</u>.

Cardenas's proposed amendment – to add the <u>Mathis</u>-based claim – does not relate back to his original petition, which centered the arguments around counsel's failure to object to Young's participation in the case.  A straightforward examination of these claims leads to the obvious conclusion: these claims are not tied to a common core of operative facts.  The original petition is based on Cardenas's prior interactions with Young; whether that created an impermissible conflict for Young; and, whether the purported conflict left Cardenas unable to accept a plea offer. Dkt. Nos. 1, 3.  In contrast, the amendment is based upon Cardenas's prior state felony convictions and whether those convictions can serve as the predicate offenses for a career offender enhancement. Dkt. No. 39-1.  Thus, the claims are in no fashion related.  For that reason, the amendment does not relate back to the filing of the original petition.

Because Cardenas's amendment does not relate back, <u>Mathis</u> – even if it's assumed to be retroactive – avails Cardenas nothing.  <u>Mathis</u> was decided on June 23, 2016. <u>Mathis</u>, 136 S. Ct. 2243.  Cardenas filed his motion to amend on February 19, 2018. Dkt. No. 39.  In other words, Cardenas did not file his amendment until more than a year and a half after <u>Mathis</u> was decided.  Accordingly, the amendment is untimely filed.

**B. Merits**

Even if Cardenas's claims were determined to be timely, they fare no better when viewed on their merits. In sum, Cardenas is not entitled to the relief he seeks.

### 1. Prosecutorial Conflict of Interest

Cardenas claims that his trial attorneys were ineffective for failing to ask the Court to remove Young as a prosecutor based on his prior experiences with Young. This claim should be denied.

As an initial matter, both Alvarez and Garza state that Cardenas informed them of his prior history with Young, while the criminal case was still pending. Dkt. Nos. 48, 49. There is no factual question as to whether his counsel was aware of the prior prosecutions and altercation. Furthermore, a prosecutorial conflict of interest is not subject to a harmless error analysis. Lanier, 879 F.3d at 150. Thus, if such a conflict existed, Cardenas would be entitled to relief. Given the law and facts of this case, there is no question that Cardenas is not entitled to relief because Young did not have a conflict of interest as a matter of law.

As previously noted, prosecutors do not operate under the same conflict of interest rules that apply to judicial officers. Marshall v. Jerrico, Inc., 446 U.S. 238, 248 (1980). Prosecutors are not expected to be "neutral and detached" and are "necessarily permitted to be zealous in their enforcement of the law." Id. While a prosecutor always has an interest in the outcome of a case, he or she is not permitted to have a personal stake in the outcome of the case beyond seeing that justice is served. U.S. v. Houston, No. 3:13-CR-10, 2015 WL 6449519, at *2 (E.D. Tenn. Oct. 26, 2015).

A defendant is entitled to have a "disinterested prosecutor" in his case, meaning a prosecutor who does not have an impermissible personal interest in carrying out the prosecution. Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 814 (1987). While the term "disinterested prosecutor" has never been fully defined, it is clear that the prosecutor cannot have conflicting loyalties, or have been privy to privileged information about the defendant, or be a witness in the case. See Matter of Hipp, Inc., 895 F.2d 1503, 1508 (5th

Cir. 1990) (bankruptcy trustee cannot prosecute a contempt case, because trustee has financial motive to recover as many resources as possible for the bankruptcy estate); Houston, 2015 WL 6449519, at *2 ("A common type of personal interest that can create a conflict of interest for a prosecutor stems from the prosecutor's prior representation of a defendant, witness, or victim."); U.S. v. Starnes, 157 F. App'x 687, 693 (5th Cir. 2005) (prosecutor has a conflict of interest if he is a "necessary witness" in the case); U.S. v. Daniels, 281 F.3d 168, 182 (5th Cir. 2002) (prosecutor's exposure to immunized statements may mandate removal from the case). "[T]he existence of a conflict of interest is a legal question." Lanier, 879 F.3d at 150.

There are two issues for the Court to consider in deciding this claim: (1) whether Young's previous prosecution of Cardenas, in state court, created a disqualifying interest for Young; and (2) whether Cardenas's 1995 altercation with Young created a similar conflict, which should have precluded Young from serving as the prosecutor in this case. Young v. U.S. ex rel. Vuitton et Fils S.A. 481 U.S. at 803.

As to the first issue, it is frivolous. While the Fifth Circuit has never addressed whether it is impermissible for a prosecutor to prosecute a defendant multiple times for unrelated offenses, the Third Circuit has addressed this issue. The Third Circuit has concluded that "[t]here is no authority to suggest that a prosecutor must disqualify himself under such circumstances, and [. . .]this issue is frivolous." U.S. v. Zagami, 374 F. App'x 295, 297-98 (3d Cir. 2010).

The mere fact that Young prosecuted Cardenas multiple times in state court and refused Cardenas's offer of assistance in the state court proceeding, did not saddle Young with a disqualifying interest in his role as an Assistant United States Attorney. It did not give Young any conflicting loyalties or an impermissible personal interest in the outcome of the trial. Cardenas claims that, because Young refused to hear his offer of substantial assistance during the state proceedings, he could not trust Young to allow him to proffer any substantial assistance in the federal proceedings, making any possible plea offer less than appealing to

him. Dkt. Nos. 1-2 & 3, pp. 4-5.  This argument ignores a key point: this "problem" did not exist because Young had an impermissible personal interest in ensuring that Cardenas did not provide substantial assistance.  Instead, the result is the product of Cardenas's subjective beliefs.  The fact that Cardenas did not like or trust Young, based upon Young's prior actions, did not create a conflict of interest for Young.  Thus, this claim is meritless.

As to the second issue, it is similarly meritless.  Cardenas claims that in 1995, after a jury trial resulted in a hung jury and mistrial, he got into an altercation with Young at a local bar. Dkt. No. 1-1.  Cardenas apparently informed his attorneys of this incident at the outset of their representation, giving credence to the idea that he did not fabricate this incident merely for the purposes of a collateral attack. Dkt. Nos. 48, 49.

There is no case directly on point for this particular situation.  In the closest analogous case, the Court held that the defendant had failed to "to substantiate the fight that allegedly took place between the prosecutor and himself when they were schoolmates." Miller v. Boucaud, No. 09-CV-6598-MAT, 2012 WL 3262426, at *8 (W.D.N.Y. Aug. 8, 2012).

In cases where the Court concluded that the prosecutor was no longer disinterested, based on previous interactions with the defendant, the facts went far beyond what happened in this case.  The Eleventh Circuit found that a prosecutor should have been removed from prosecuting a perjury case after the defendant attempted to murder him in open court. U.S. v. Spiker, 649 F. App'x 770, 773 (11th Cir. 2016).  In a second case, the Second Circuit found that there was an appearance of impropriety when the prosecutor's wife was "a lawyer who had on two occasions brought complaints to federal authorities that could have resulted in criminal charges against [the defendant], who had actively petitioned various federal, state and local agencies to investigate [the defendant's] alleged misdeeds, who had allegedly been assaulted by [the defendant's] minions, and who almost certainly harbored personal animosity against [the defendant]." Wright v. U.S., 732 F.2d 1048, 1055 (2d Cir. 1984).  In another case, the Fourth Circuit held that the prosecutor should have been removed from a case when he was also representing the defendant's wife in a divorce action against the

defendant. <u>Ganger v. Peyton</u>, 379 F.2d 709, 711 (4th Cir. 1967).  In each of these actions, the personal interactions between the prosecutor and the defendant happened simultaneously or nearly simultaneously with the prosecution and the impropriety was obvious on its face.

On the other hand, there are prior interactions between a prosecutor and defendant that do not require the prosecutor's removal from the case. <u>U.S. v. Gayle</u>, 406 F. App'x 352, 363 (11th Cir. 2010) (defendant filing a state bar ethics complaint against the prosecutor did not mandate removal); <u>U.S. v. Kahre</u>, 737 F.3d 554, 575 (9th Cir. 2013) (defendant's filing of a civil rights action against the prosecutor and the prosecutor saying that the filing of the civil action made the criminal case "personal" to him did not mandate removal).

The altercation between Cardenas and Young occurred in 1995, some 17 years prior to his indictment in the drug trafficking case and more than 18 years before trial in this case began.  CR 512 Dkt. No. 1.  By Cardenas's own admission, when he confronted Young about the prior fight, Young replied that it "happen[ed] a long time ago." Dkt. No. 1-1, p. 2.  The mere existence of the prior altercation, so remote in time, is not enough to establish that Young had "an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged." <u>Wright</u>, 732 F.2d at 1056.

Moreover, the facts of the case show that Young was not vindictively prosecuting Cardenas based on the putative conflict of interest.  Young offered Cardenas a plea deal where Cardenas would plead guilty to the marijuana conspiracy and the money remittance charges and the Government would seek to rescind the statutory enhancement that required a life sentence for the drug charges. CR 512 Dkt. No. 480, pp. 3-4.  Cardenas understood the terms of the plea offer, the risks he faced by proceeding to trial, and stated he was "voluntarily" rejecting the offer.  <u>Id</u>.   The mere fact that Young filed the statutory enhancement is not proof that he had become a conflicted prosecutor. <u>Gayle</u>, 406 F. App'x at 364-65 (a "prosecutor does not take unilateral action against the defendant, punitively or otherwise, when she merely argues that the district court should apply an offense-level

25

enhancement based on the facts of the case.").

In short, the altercation 17 years earlier was not of a nature that it automatically gave Young an impermissible personal stake in the outcome of the proceedings. Given this holding, Cardenas's attorneys were not ineffective for failing to seek Young's removal. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Thus, even if this claim was timely filed, it does not merit relief and should be denied.[6]

### 2. Prior Convictions

As previously outlined, Cardenas asserts that under the holdings of Mathis and Hinkle, his sentence must be overturned because his prior Texas state drug trafficking convictions cannot serve as predicate offenses for a career offender sentencing enhancement under the Guidelines. This claim, assuming it is cognizable on collateral attack and timely filed, misconstrues the law.

Under federal law, if a defendant is convicted of committing a violation of 21 U.S.C. § 841(a) "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). A "felony drug offense" is one "that is punishable by imprisonment for more than one year under any law of the United States or of a State." 21 U.S.C. § 802(44). The Fifth Circuit has concluded that a Texas state conviction for delivery of a controlled substance meets the definition of a "felony drug offense" for purposes of this statute. U.S. v. Whitehead, 299 F. App'x 420, 422 (5th Cir. 2008).

Cardenas had three prior convictions for delivery of a controlled substance, when he

---

[6] The hung jury in Cardenas's state case, as well as the fight with Young, occurred in January 1995. Dkt. No. 1-1, p. 1. The retrial of the state case occurred in April 1995. Id. There is no evidence in the record that Cardenas sought to disqualify Young from retrying the state case on the grounds that Young had an impermissible personal interest in the prosecution. It seems unusual that an altercation from 17 years ago created a conflict in the present case, but apparently was not alleged to have created a similar conflict just four months after the altercation occurred.

committed the criminal acts underlying his conviction in this case. CR 512 Dkt. No. 437, pp. 43-44; Dkt. No. 447 (Government's sentencing exhibit of the judgment of conviction in the three cases).   The Fifth Circuit has already held that Cardenas's Texas felony drug convictions were properly held to be separate convictions; while he pled guilty to all three convictions on the same day, the underlying criminal acts took place on separate days. U.S. v. Cardenas, 606 F. App'x at 247.   Thus, Cardenas faced a mandatory life sentence in the instant case for his convictions for conspiracy with intent to distribute more than five kilograms of cocaine, and two counts of possession with intent to distribute more than five kilograms of cocaine.   21 U.S.C. § 841(b)(1)(A)(ii).

The District Court recognized this at sentencing, finding that the sentence of life imprisonment was mandatory for the three cocaine-related convictions and assessing a non-mandatory life sentence for the conspiracy to possess marihuana conviction. CR 512 Dkt. No. 494, p. 54.   The transcript notes Young asking for clarification on the sentence.

> [YOUNG:] And so that Count 1, 5 and 10, which are in 841(a), it is a statutory mandatory minimum of life, and in Count 2 was a B series – it is the conspiracy of marijuana, and that is a ten to life and by guidelines and by range of punishment the Court is assessing a life sentence for Count 2.
>
> [COURT:] Yes.

CR 512 Dkt. No. 494, p. 54.

Thus, Cardenas was sentenced to a mandatory life sentence for his cocaine offenses based upon the statutory provisions found at 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 802(44) (defining a "felony drug offense").   Neither Mathis nor Hinkle are applicable to these statutory provisions.

The statute at issue in Mathis was based upon the definition of a "violent felony" found at 18 U.S.C. § 924(e)(2)(B)(ii), not the definition of a "felony drug offense" under § 802(44).   These are two different statutory provisions with two very different underlying definitions.   Simply put, Mathis is inapplicable to the definition of "felony drug offense" found at 21 U.S.C. § 802(44).

27

Furthermore, Hinkle addressed the definition of a "controlled substance offense" found at U.S.S.G. § 4B1.1, which also has a different definition than the one used for a felony drug offense. "As the definition for 'felony drug offense' set forth in Section 802(44) is the definition applicable to movant's case, and is different from the definition of 'controlled substance offense' contained in § 4B1.1, movant's reliance on Hinkle is unavailing." Collier v. U.S., No. 1:12CV376, 2017 WL 3879096, at *6 (E.D. Tex. July 13, 2017), report and recommendation adopted, No. 1:12-CV-376, 2017 WL 3903018 (E.D. Tex. Sept. 5, 2017). Cardenas is not entitled to relief as to these claims.

Even if the Court considers Mathis and Hinkle more broadly applicable than just the specific analysis set forth in those cases, Cardenas fares no better. Those cases both addressed what approaches the Court should use to determine if a specific state statute of conviction meets the generic definition of a crime listed in a federal statute or sentencing guidelines. See Mathis, 136 S. Ct. 2243, 2248 (determining whether the Iowa burglary statute meets the generic definition of burglary as used in the Armed Career Criminal Act) & Hinkle, 832 F.3d at 572 (determining whether the Texas delivery of a controlled substance statute meets the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2).

In this case, the Court is not faced with the same task of comparing a state statute with a generic definition of an offense. The definition of a "felony drug offense," under 21 U.S.C. § 841(b)(1)(A), encompasses "any criminal conduct relating to narcotics that a state has proscribed as a felony (including simple possession), regardless of whether it is a felony under federal law." U.S. v. Smith, No. 1:12-CR-00088-01, 2017 WL 3528954, at *6 (W.D. La. July 11, 2017), report and recommendation adopted, No. 1:12-CR-00088-01, 2017 WL 3528915 (W.D. La. Aug. 14, 2017) (collecting cases). Thus, the analytical approaches described in Mathis and Hinkle do not apply to the statute in question. Id.

Even if Mathis and Hinkle were found to apply in this case as urged by Cardenas, he fares no better. The Court notes that the final presentence report pointed out that Cardenas was considered a career offender under U.S.S.G. § 4B1.1. CR 512 Dkt. No. 437, p. 41. To

whatever extent that finding was in error, it is not cognizable on collateral attack. U.S. v. Hixon, 62 F.3d 393 (5th Cir. 1995) (defendant's claim that court erred by finding he was a career offender under § 4B1.1 "is not cognizable under § 2255").

Moreover, any error was harmless.  The result of the career offender guideline enhancement in Cardenas's case was that his criminal history category was automatically converted to Category VI. CR 512 Dkt. No. 437, p. 41.  Even without that finding, Cardenas had 14 criminal history points, which would have placed him in Category VI, regardless of the career offender finding. Id., p. 45.  Thus, any possible imposition of an erroneous career offender guideline was harmless error. U.S. v. Ibarra-Luna, 628 F.3d 712, 713-14 (5th Cir.2010) (holding that an error in the calculation of the applicable Guidelines range is subject to harmless error analysis).  Thus, Cardenas's argument is meritless and should be denied.

## IV.  Recommendation

It is recommended that Petitioner Julio Cesar Cardenas's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be dismissed as untimely filed, or alternatively, denied as meritless.  It is further recommended that his motion to amend be dismissed as untimely filed and procedurally defaulted, or alternatively, denied as meritless.

### A.  Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1).  A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006).  A district court may sua sponte

rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Cardenas's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Cardenas's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is recommended that a COA should be denied.

**B. Notice to Parties**

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rolando Olvera, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. <u>See</u> § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on May 7, 2018.

_____
Ronald G. Morgan
United States Magistrate Judge

30